IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MUMIN SLAUGHTER,<br>Plaintiff,<br>v.<br>CITY OF PHILADELPHIA, et al.,<br>Defendants. | CIVIL ACTION<br>NO. 25-7049 |

# OPINION

**Slomsky, J.** **October 20, 2026**

## TABLE OF CONTENTS


**I. INTRODUCTION**……………………………………………………….…..….... 3

**II. BACKGROUND**……………………………………………………………………. 3

A. Factual Background……………………………………………………………… 3

B. Procedural Background…………………………………………….…………..… 5

**III. STANDARD OF REVIEW** ……………………………………………………...… 7

A. Motion to Dismiss Under Rule 12(b)(6) …………………………..…………………... 7

B. Section 1983……………………………………………………………………..... 8

**IV. ANALYSIS**……………………………………………………………………..……… 9

A. The Fourteenth Amendment Malicious Prosecution Claim
Against Detective Defendants in Count II Will Be Dismissed………………..………..... 9

B. The Monell Claim Against Defendant City of Philadelphia
in Count V Will Be Dismissed …….…………………………………………….………. 15

1. The Amended Complaint Sufficiently
Alleges a Deprivation of Rights…………………………………………...…… 17

2. The Amended Complaint Fails to State
a Monell Claim Based on Municipal Policy or Custom……………………..……… 17

a. The Amended Complaint Does Not Sufficiently
Allege a Municipal Policy……..……………………………………………….. 18

b. The Amended Complaint Does Not Sufficiently
Allege a Municipal Custom Claim……..…………………..………………… 19

3. The Amended Complaint Fails to State
a Monell Claim Based on Deliberate Indifference…………………………………... 24

C. The Monell Claim Against Defendant Abraham
in Count VI Will Be Dismissed …………..………………...……………………….… 28

D. All Claims Against Defendants
Booker and Bova Will Be Dismissed……………………………………...……….. 31

**V. CONCLUSION**……………………………………………………………………...… 31

## I. INTRODUCTION

Plaintiff Mumin Slaughter ("Plaintiff") spent nineteen (19) years in prison for a murder he did not commit. He brings this civil rights action pursuant to 42 U.S.C. § 1983 against the City of Philadelphia, Lynne Abraham in her official capacity as then District Attorney of Philadelphia, John Doe as the Personal Representative of the Estate of former Detective Thomas Augustine, and former Detectives George Pirrone, Richard Harris, John McDermott, Michael Walters, Marvin King, Richard Bova, and Aaron Booker.

Defendants City of Philadelphia, Pirrone, Harris, Walter, King, Bova, and McDermott have filed a Motion to Dismiss the Amended Complaint, more specifically, Count II in part and Count V in its entirety. (Doc. No. 26). Defendant Abraham has filed a Motion to Dismiss, specifically Count VI, in which she is sued in her official capacity (Doc. No. 36). Defendant Booker has filed a Motion to Dismiss all counts against him for failure to state a claim. (Doc. No. 25.) His dismissal has been agreed to by Plaintiff. (See Doc. No. 33.)

For reasons that follow, Defendants City of Philadelphia, Pirrone, Harris, Walter, King, Bova, and McDermott's Motion to Dismiss (Doc. No. 26), Defendant Abraham's Motion to Dismiss (Doc. No. 36), and Defendant Booker's Motion to Dismiss (Doc. No. 25) will be granted.

## II. BACKGROUND

### A. Factual Background

This case has an extensive factual history involving multiple criminal trials and appeals in Pennsylvania state court, but for purposes of this Opinion, only the most pertinent facts are set forth. They are taken from the Amended Complaint (Doc. No. 17). The well-pleaded allegations

in the Amended Complaint are treated as true for the purpose of evaluating a Motion to Dismiss. Fowler v. UPMC Shadyside, 578 F.3d 203, 201–11 (3d Cir. 2009).

On August 25, 2005, at 2:00 a.m., off-duty Philadelphia Police Officer Terrence Flomo was shot and killed. (Doc. No. 17 ¶ 27.) The Philadelphia Police Department ("PPD") assigned Detectives Augustine, Pirrone, Harris, McDermott, Walters, King, Bova, and Booker ("Detective Defendants") to investigate. (Id. ¶ 28.) Defendant Detectives questioned Brenda Bowens ("Bowens") and Nora Williams ("Williams"), who were present in the area of the shooting, but both women said that they had not witnessed anything. (Id. ¶ 31.) To expedite the case, Defendant Detectives arbitrarily selected photos of Plaintiff and William Johnson ("Johnson"), both of whom had open bench warrants, and threatened Bowens and Williams with criminal charges unless they falsely identified Plaintiff and Johnson as the shooters. (Id. ¶¶ 32, 36–37.) Based on the false coerced statements of Bowens and Williams, Plaintiff and Johnson[1] were arrested and charged with murder. (Id. ¶ 47.)

In 2006, prior to Plaintiff's trial, Bowens sent a letter to District Attorney Lynne Abraham and trial prosecutor Carlos Vega, recanting her inculpatory testimony against Plaintiff and explaining she had been "threatened and forced" into providing it. (Id. ¶ 49.) Believing the letter to be "bullshit," District Attorney Abraham and Prosecutor Vega deliberately suppressed it in accordance with alleged policies, practices, and customs of the District Attorney's Office ("DAO"). (Id. ¶ 50.)

In 2007, Plaintiff was convicted of third-degree murder and sentenced to 25-50 years in prison. (Id. ¶¶ 62, 69.) In 2020, Plaintiff filed in state court a Post Conviction Relief Act

[1] This case is related to Johnson v. Philadelphia District Attorney's Office, et al., a civil rights claim brought by Plaintiff's co-defendant William Johnson. See No. 24-cv-00036 (E.D. Pa.).

("PCRA") Petition to vacate his conviction. (Id. ¶ 72.) During discovery, the prosecution produced their files, including the long-suppressed Brady evidence, Bowens' letter. (Id.) Plaintiff then filed a federal habeas petition and a petition for relief under Pennsylvania's PCRA, noting that the Brady violation and Defendants' official misconduct led to the exoneration of his co-defendant Johnson. (Id. ¶ 74.) On May 9, 2024, the DAO conceded that a constitutional violation of Plaintiff's rights had occurred. (Id. ¶ 75.) On June 17, 2024, the Philadelphia County Court of Common Pleas granted Plaintiff's PCRA petition and the prosecution's motion to dismiss all charges against him. (Id. ¶ 76.) In 2024, Plaintiff, who had always maintained his innocence, was finally released from custody after serving nineteen (19) years in prison. (Id.)

**B. Procedural Background**

On February 13, 2026, Plaintiff filed the Amended Complaint (Doc. No. 17) against the following ten defendants: (1) the City of Philadelphia, (2) former District Attorney Lynne Abraham, (3) Detective George Pirrone, (4) Detective Richard Harris, (5) Detective Thomas Augustine, (6) Detective Michael Walters, (7) Detective Marvin King, (8) Detective Richard Bova, and (9) Detective Aaron Booker. (Id. at 1.)

In the Amended Complaint, Plaintiff asserts the following eight claims:

> Count I: Coercion and Fabrication of Evidence in violation of the Fourteenth Amendment under 42 U.S.C. § 1983 against Detective Defendants;
>
> Count II: Malicious Prosecution in violation of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983 against Detective Defendants;
>
> Count III: Suppression of Exculpatory and/or Impeachment Evidence in violation of the Fourteenth Amendment under 42 U.S.C. § 1983 against Detective Defendants;
>
> Count IV: Civil Rights Conspiracy in violation of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983 against Detective Defendants;
>
> Count V: A Monell claim under 42 U.S.C. § 1983 against the City of Philadelphia;

> Count VI: A Monell claim under 42 U.S.C. § 1983 against Lynne Abraham in her official capacity;
>
> Count VII: A supplemental state law claim of malicious prosecution against Detective Defendants; and
>
> Count VIII: A supplemental state law claim of conspiracy against Detective Defendants.

(Id. at 42-46.)

On March 9, 2026, Defendant Booker filed a Motion to Dismiss all counts against him for Failure to State a Claim. (Doc. No. 25.) In the Motion to Dismiss, Defendant Booker argues that the Amended Complaint lacks sufficient factual allegations to establish his personal involvement in the alleged misconduct. (Id. at 8.)

On March 9, 2026, Defendant City of Philadelphia and Detective Defendants, not including Defendant Booker, filed a Motion to Dismiss for Failure to State a Claim. (Doc. No. 26.) In their Motion to Dismiss, Defendants seek dismissal of several of Plaintiff's claims. First, Detective Defendants move to dismiss Count II of the Amended Complaint, the malicious prosecution claim, but only insofar as it is based on the Fourteenth Amendment, arguing that they are entitled to qualified immunity. (Doc. No. 26 at 5.) Second, Defendant City of Philadelphia moves to dismiss Count V, the Monell claim, arguing that Plaintiff has failed to allege a sufficient municipal liability claim. (Id. at 8-9.) Third, Defendants argue that Defendant Bova should be dismissed from the suit entirely because the Amended Complaint fails to allege that he was personally involved in the alleged constitutional violations. (Id. at 7.)

On April 20, 2026, Plaintiff filed a Response in Opposition to the Motions, agreeing to dismiss Defendants Booker and Bova in the case. (Doc. No. 33.) On May 1, 2026, Defendants

City of Philadelphia, Pirrone, Harris, Walter, King, Bova and McDermott filed a Reply. (Doc. No. 34.)

A few weeks later, on May 26, 2026, Defendant Abraham filed a Motion to Dismiss Count VI for Failure to State a Claim, arguing that the Monell claim brought against her in her official capacity should be dismissed because the District Attorney's Office is not a state actor under Section 1983. (Doc. No. 36 at 5.) On June 16, 2026, Plaintiff filed a Response in Opposition to the Motion to Dismiss. (Doc. No. 39.) On June 23, 2026, Defendant Abraham filed a Reply. (Doc. No. 40.) The Court will address each argument made in the Motions in turn.

## III. STANDARD OF REVIEW

### A. Motion to Dismiss Under Rule 12(b)(6)

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Iqbal, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit Court of Appeals in

Santiago v. Warminster Twp., 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (second alteration in original) (citation omitted). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

**B. Section 1983**

Section 1983 provides a remedy for deprivation of a right established under the United States Constitution and federal law when the deprivation is perpetrated by a state officer. Estate

of Smith v. Marasco, 318 F.3d 497, 505 (3d Cir. 2003). Section 1983 provides in pertinent part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. Therefore, to successfully bring a claim under § 1983, Plaintiff must allege (1) conduct by a person, (2) who acted under color of state law, (3) which caused a deprivation of a federally protected right. West v. Atkins, 487 U.S. 42, 48 (1988). "Under Section 1983, a plaintiff must plead a deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." Phillips, 515 F.3d at 235 (citing Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996)). Both elements are necessary to make out a successful Section 1983 claim.

## IV. ANALYSIS

### A. The Fourteenth Amendment Malicious Prosecution Claim Against Detective Defendants in Count II Will Be Dismissed

In Detective Defendants' Motion to Dismiss, they aver that they are entitled to qualified immunity on Plaintiff's malicious prosecution claim, insofar as it is based on the Fourteenth Amendment, because the constitutional right in issue was not clearly established at the time of the challenged conduct. (Doc. No. 26 at 5.) The Court agrees.

"Qualified immunity protects a government official from liability for civil damages as long as his conduct did not violate clearly established rights of which a reasonable person would have known." Naisha v. Metzger, No. 20-3056, 2021 WL 5632063, at *2 (3d Cir. Dec. 1,

2021) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Because qualified immunity is an affirmative defense, a defendant has the burden of proving he is entitled to such a defense. Gomez v. Toledo, 446 U.S. 635, 640 (1980). The qualified immunity analysis is two-fold, as a court must determine: (1) "whether the facts alleged by the plaintiff show the violation of a constitutional right"; and (2) "whether the law was clearly established at the time of the violation." Jefferson v. Lias, 21 F.4th 74, 80 (3d Cir. 2021) (citing Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010)). In order to assess whether an alleged violation was of such a right, a court must "identify the exact contours of the underlying right" with sufficient specificity. Berg v. City of Allegheny, 219 F.3d 261, 268 (3d Cir. 2000).

Before deciding whether the constitutional right Plaintiff relies upon to state a malicious prosecution claim was clearly established, the Court must first frame the precise right at issue. See Spady v. Bethlehem Area Sch. Dist., 800 F.3d 633, 638 (3d Cir. 2015) (defining the constitutional right allegedly violated with specificity). Plaintiff alleges that his claim is derived from the Due Process Clause of the Fourteenth Amendment, which reads that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, ¶ 1. Plaintiff argues that this case implicates a Fourteenth Amendment procedural due process right to be free from "prosecution against [Plaintiff] without probable cause and with malice." (Doc. No. 17 ¶ 108.) In essence, the constitutional right at issue here is whether it was clearly established at the time of the homicide investigation and prosecution of Plaintiff that the fabrication of evidence and coercive interrogation tactics carried out by Detective Defendants violated the Fourteenth Amendment.

As Detective Defendants correctly note, the status of a Fourteenth Amendment right to be free from malicious prosecution is murky. The plurality in the United States Supreme Court's

decision in Albright v. Oliver held that there is no right to be free from malicious prosecution under the substantive due process clause of the Fourteenth Amendment. 510 U.S. 266, 271-75 (1994). Albright did not hold, however, that such a right exists under the procedural due process clause.

In the aftermath of Albright, the question arose in the Third Circuit as to whether the right to be free from malicious prosecution exists under the procedural due process clause. Compare Hicks v. City of Phila., 783 F. Supp. 3d 834, 850 (E.D. Pa. 2025) (finding that while the Fourteenth Amendment right to be free from malicious prosecution may be consistent with procedural due process, it nevertheless is not clearly established), with Gallo v. City of Phila., 161 F.3d 217, 222 (3d Cir. 1998) (suggesting that Supreme Court case law leaves open only the Fourth Amendment as a potential source of malicious prosecution claims).

The clearest post-Albright guidance from the Third Circuit came in Torres v. McLaughlin, 163 F.3d 169 (3d Cir. 1998). There, the court held that while Section 1983 malicious prosecution claims could not be based on substantive due process, they nevertheless "may be based on a constitutional provision other than the Fourth Amendment." Torres, 163 F.3d at 172. But in Gallo, the Third Circuit had already implied that a malicious prosecution claim must be grounded in a Fourth Amendment seizure of the person. 161 F.3d at 222. Ultimately, the Third Circuit acknowledged the confusion, noting that there was a lack of clarity in the case law regarding a Fourteenth Amendment procedural due process claim for malicious prosecution, that is, that some cases interpreting Albright "have suggested that § 1983 malicious prosecution claims may be predicated on constitutional provisions other than the Fourth Amendment, such as procedural due process." Washington v. Henshaw, 552 Fed. App'x 169, 174 n.3 (3d Cir. 2014).

Given the unsettled law on whether a malicious prosecution claim can be based on the Fourteenth Amendment, the Court agrees with other district courts that such a right could not have been clearly established before 2005.

For example, in Thomas v. City of Philadelphia, the court held that police officers were entitled to qualified immunity on plaintiff's claim for malicious prosecution based on the Fourteenth Amendment because

> [t]he procedural due process right against malicious prosecution is not clearly established. The Supreme Court has not yet articulated such a right. And the Third Circuit Court of Appeals stopped short of deciding the right's "viability" in 2014, let alone in the early 1990s when Mr. Thomas interacted with the defendants. See Halsey [v. Pfeiffer, 750 F.3d 273, 290 n.14 (3d Cir. 2014)]; see also Mondragon [v. Thompson, 519 F.3d 1078, 1083 (10th Cir. 2008)] ("After the institution of legal process, any remaining constitutional claim is analogous to a malicious prosecution claim. The Supreme Court has not yet explicitly decided whether such a claim exists in these circumstances under the Fourth Amendment or the procedural component of the Due Process Clause.").

290 F. Supp. 3d 371, 382 (E.D. Pa. 2018).

Similarly, the court in Alicea v. City of Philadelphia found that defendants were entitled to qualified immunity on plaintiff's Fourteenth Amendment malicious prosecution claim:

> It is unclear whether a right to be free from malicious prosecution exists under the Due Process Clause of the Fourteenth Amendment. The Supreme Court has expressly held that there is no substantive due process right to be free from malicious prosecution. Albright v. Oliver, 510 U.S. 266, 271 (1994) . . . Given that the law remains unsettled to this day, a Fourteenth Amendment procedural due process right to be free from malicious prosecution could not have been "clearly established" at the time of the individual Defendants' conduct. See Thomas v. City of Phila., 290 F. Supp. 3d 371, 382 (E.D. Pa. 2018).

No. 22-3437, 2022 WL 17477143, at *4 (E.D. Pa. Dec. 6, 2022). And other district courts have applied similar reasoning when addressing whether defendants were entitled to qualified immunity on a malicious prosecution claim based on the Fourteenth Amendment. See Hicks v. City of Phila.,

783 F. Supp. 3d 834, 851 (E.D. Pa. 2025) ("Because the Third Circuit still has not decided whether [a right to be free from malicious prosecution under the Fourteenth Amendment] exists, qualified immunity must apply); see also Ogrod v. City of Phila., 598 F. Supp. 3d 253, 266 (E.D. Pa. 2022) ("Based on this Third Circuit authority, we can only conclude that, between 1992 and 1996, when Ogrod was both interrogated and convicted, it was not clearly established that the Fourteenth Amendment provided for a procedural due process right against malicious prosecution.").

Detective Defendants' conduct in this case occurred between 2005 and 2007, when Plaintiff was interrogated and convicted. Thus, in accordance with the rulings noted above, the constitutional right at issue here would not have been clearly established at the time of Detective Defendants' conduct.

Plaintiff attempts to evade this conclusion by arguing that because Albright and the Third Circuit did not explicitly foreclose the possibility that a malicious prosecution claim can be grounded in the Fourteenth Amendment procedural due process clause, such a claim is still viable. (Doc. No. 33 at 11.)

For support, Plaintiff emphasizes the temporal distinction between the Fourth and Fourteenth Amendments, noting that the Fourth Amendment's protections extend only up to trial, while Fourteenth Amendment applies through and after trial. (Id.) And because Plaintiff seeks damages stemming from Detective Defendants' alleged misconduct that extended for two decades beyond the trial phase, recovery on a malicious prosecution theory would be greatly limited if a Fourteenth Amendment right against malicious prosecution is not recognized. (Doc. No. 33 at 11.) In this regard, Plaintiff relies on Crosland v. Philadelphia, where the court noted that the temporal limitations on the Fourth Amendment "could affect both the conduct that [a] malicious prosecution claim reaches and the harm it can redress." 676 F. Supp. 3d 364, 374 (E.D. Pa. 2023). As such,

Plaintiff urges the Court to recognize a Fourteenth Amendment pathway here because his ability to collect damages on his malicious prosecution claim largely depends on it.

However, Plaintiff ignores the Third Circuit's ongoing struggle with whether a Fourteenth Amendment procedural due process claim for malicious prosecution is viable. Most importantly, a Fourteenth Amendment procedural due process right against malicious prosecution was not clearly established in 2005—the time of the PPD's homicide investigation into Plaintiff—and for that matter is still not clearly established today. Moreover, the conduct-focused approach advanced by Plaintiff, in which the officers' conduct is claimed to be the only matter in issue, was expressly rejected in Thomas, finding that "'the contours of the right,' as opposed to the conduct, 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" 290 F. Supp. 3d at 383 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987) (emphasis added)).

This Court will not adopt an approach to qualified immunity that focuses only on Detective Defendants' conduct, as opposed to the contours of the constitutional right, because it runs counter to qualified immunity law as it currently stands. See id. at 382 ("It would be strange to say that right *X* is clearly established just because right *Y* is clearly established and happens to prohibit the same conduct."); Alicea, 2022 WL 17477143, at *4 (agreeing with Thomas that when analyzing qualified immunity, the precise contours of the right should be articulated); Hicks, 783 F.Supp.3d at 850 (agreeing with Thomas and rejecting a conduct-focused approach when evaluating the source of a constitutional right). In fact, the temporal distinction between the Fourth and Fourteenth Amendments—that the Fourth Amendment's protections extend only until trial, while Fourteenth Amendment applies through and after trial—emphasizes the differences in the respective rights. As such, the guarantees provided by the Fourth and Fourteenth Amendments

"are not interchangeable." Hicks, 783 F.Supp.3d at 850. And it would be too far of an inferential leap to find that a malicious prosecution claim grounded in the Fourteenth Amendment was clearly established just because the same conduct clearly violated Plaintiff's Fourth Amendment right against malicious prosecution.

Because the Third Circuit has not given definitive guidance as to whether such a right exists, qualified immunity must apply to Plaintiff's malicious prosecution claim under the Fourteenth Amendment. As such, Count II will be dismissed to the extent that it asserts a malicious prosecution claim grounded in the Fourteenth Amendment.

However, this reasoning is not applicable to Plaintiff's malicious prosecution claim under the Fourth Amendment. Because Detective Defendants have not moved to dismiss the Fourth Amendment malicious prosecution claim, Count II will remain in part with this claim. Additionally, because Detective Defendants do not seek dismissal of Counts I, III, IV, VII or VIII, the claims alleged in those Counts will remain against them.

**B. The Monell Claim Against Defendant City of Philadelphia in Count V Will Be Dismissed**

In Count V of the Amended Complaint, Plaintiff brings a Monell claim against the City of Philadelphia ("the City"), predicated on several theories of liability. First, Plaintiff asserts that the City acquiesced to a policy, practice and custom of the Philadelphia Police Department ("PPD") to conceal exculpatory and impeachment evidence and engage in coercive investigation techniques. (Doc. No. 17 ¶ 88.) Second, Plaintiff argues that the City is liable under Section 1983 for remaining "deliberately indifferent to the constitutional duty to train, supervise, and discipline police officers" that were engaging in wrongful conduct. (Id. ¶ 89.) Under either theory, Plaintiff has failed to plead sufficient facts to state a municipal liability claim against the City of Philadelphia.

In Monell v. Dep't of Soc. Servs., the United States Supreme Court held that municipal entities can be subject to Section 1983 liability in certain circumstances. 436 U.S. 658, 690 (1978). The gravamen of Monell and its progeny is that "recovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality' – that is, acts which the municipality has officially sanctioned or ordered." Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986). In other words, the constitutional deprivation must have had its origin in the policy or custom of the municipality, and liability based on the actions of city officials exists only where it can be shown that the officials acted in accordance with that policy or custom, or with deliberate indifference to a violation of a constitutional right. Monell, 436 U.S. at 694.

Moreover, municipalities cannot be held liable under Section 1983 for the acts of its employees based on the doctrine of respondeat superior or for other forms of vicarious liability. Id. at 692 (noting that the language of Section 1983 "cannot easily be read to impose liability vicariously on government bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor"); see also Reitz v. Cnty. of Bucks, 125 F.3d 139, 146 (3d Cir. 1997) ("[L]iability simply cannot be predicated upon a showing of respondeat superior.")

Furthermore, allegations that simply paraphrase the standard for municipal liability are too vague and generalized to support a claim against the municipality. See, e.g., Szerensci v. Shimshock, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under Monell.") (citing cases).

Thus, under Monell, to state a Section 1983 claim against a municipality, a plaintiff must establish that (1) a constitutionally protected right has been violated, and (2) the alleged violation resulted from a municipal policy, custom, or deliberate indifference to a violation of a

constitutional right. Monell, 436 U.S. at 694-95, 98; see also Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990).

In the Motion to Dismiss, the City argues that Count V must be dismissed in its entirety because the Amended Complaint does not allege facts that establish the second prong of a Monell claim, requiring a showing that the alleged violations resulted from a municipal policy, custom, or deliberate indifference. (Doc. No. 26 at 8.)

**1. The Amended Complaint Sufficiently Alleges a Deprivation of Rights**

As to the first prong of Plaintiff's Monell claim, the City does not dispute that the Amended Complaint plausibly alleges that there may be an underlying constitutional violation of Plaintiff's rights. The Amended Complaint alleges four potential predicate violations: (1) the Fourteenth Amendment fabrication claim in Count I; (2) the Fourth Amendment malicious prosecution claim in Count II; (3) the Brady claim in Count III; and (4) and the civil rights conspiracy claim in Count IV. Because Plaintiff has asserted four potential constitutional violations, he has sufficiently alleged a deprivation of his rights. Thus, the dispute here is whether Plaintiff's allegations concerning the second prong of his Monell claim—the alleged violation that resulted from a municipal policy, custom, or deliberate indifference to a violation of a constitutional right—is sufficiently pled.

**2. The Amended Complaint Fails to State a Monell Claim Based on Municipal Policy or Custom**

As noted, Plaintiff advances several theories of municipal liability in an attempt to establish the second prong of his Monell claim against the City. As to Plaintiff's first municipal liability theory, Count V must be dismissed because Plaintiff has not pled sufficient facts to establish a claim based on an unlawful municipal policy or custom.

As noted above, a plaintiff may bring a Section 1983 claim for damages against a government entity only when the alleged unlawful action was taken pursuant to a policy or custom of the municipality, not when the action was an isolated act of an official. Monell, 436 U.S. at 690-91. "[T]he action that is alleged to be unconstitutional [must] implement[ ] or execute[ ] a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers . . . [or] pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." Id.; see also Williams v. Borough of W. Chester, Pa., 891 F.2d 458, 467 (3d Cir. 1989). When lodging a Monell claim based on policy or custom, the complaint must sufficiently "link the alleged offending policies or customs to anyone . . . who had policy-making authority." Rees v. Office of Child. & Youth, 473 Fed. App'x 139, 143 (3d Cir. 2012).

**a. The Amended Complaint Does Not Sufficiently Allege a Municipal Policy**

There are numerous ways a plaintiff can sufficiently allege the existence of a municipal policy. For example, a plaintiff can cite the official policy. See Monell supra. "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 403 (1997). Alternatively, a policy "need not be passed by a legislative body, or even be in writing, to constitute an official policy for the purposes of § 1983." Porter v. City of Phila., 975 F.3d 374, 383 (3d Cir. 2020).

Here, the Amended Complaint's bare, conclusory allegations are insufficient to state a claim under Monell based on a municipal policy to fabricate evidence and engage in improper investigatory techniques. Plaintiff alleges that there is "documented evidence of the City of

Philadelphia's policy" of "unconstitutional misconduct in homicide investigations." (Doc. No. 17 ¶ 78.) But no specific policy, statement, ordinance, regulation, or decision officially adopted and promulgated by City of Philadelphia officials has been provided. Without this, Plaintiff's accusations fall short of showing that a City-wide policy was in place.

**b. The Amended Complaint Does Not Sufficiently Allege a Municipal Custom Claim**

"Customs are 'practices of state officials ... so permanent and well settled as to virtually constitute law.'" Id. (quoting Monell, 436 U.S. at 691). "[C]ustom requires proof of knowledge and acquiescence by the decisionmaker." McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009). In other words, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990) (citation omitted). Widespread behavior by police officers does not amount to a municipal custom unless there is "knowledge and acquiescence by the decisionmaker." McTernan, 564 F.3d at 658.

Here, Plaintiff has not stated a Monell claim based on municipal custom because while Plaintiff has pled sufficient facts to establish the existence of a municipal custom that caused his injuries, the Amended Complaint fails to identify a municipal policymaker that knew about and acquiesced to that custom.

To start, the Amended Complaint alleges sufficient facts to plausibly show the existence of a custom by the Philadelphia Police Department ("PPD") to engage in widespread constitutional violations. At this stage, Plaintiff's allegations demonstrate that the PPD had longstanding practices of fabricating evidence, conducting coercive interrogations, and concealing exculpatory evidence when investigating homicides.

To establish the custom, Plaintiff traces numerous wrongful convictions over decades, citing newspaper articles, investigations, and lawsuits involving similar police misconduct. (See Doc. No. 17 at ¶ 89.) For example, the Amended Complaint cites a pattern of conduct throughout the 1980s and 1990s perpetrated by a PPD police squad engaging in similar unconstitutional tactics, prompting investigations by the FBI, prosecutions of the officers, and filing of a class action lawsuit. (Id. ¶¶ 85-86.) And citations to multiple incidents implicating a particular custom have been sufficient to allege the existence of a municipal custom. See Harris v. City of Phila., 171 F. Supp.3d 395, 401-02 (E.D. Pa. 2016) (finding a custom where there were "multiple incidents" of police officers using reckless and excessive force in their use of batons); see also Simpson v. Ferry, 202 F. Supp. 3d 444, 452 (E.D. Pa. 2016) (permitting a Monell claim to proceed following a review of the plaintiff's statistical analysis about the number of lawsuits brought against the Philadelphia Police Department for use of excessive force). Accordingly, the record in this case contains sufficient facts to establish a custom of the PPD to engage in improper investigatory techniques.

Next, the Amended Complaint contains sufficient evidence to supply an affirmative link between the PPD's custom and Plaintiff's unlawful prosecution and imprisonment, as required under Section 1983.

Proof of an unlawful policy or custom exists alone is insufficient to sustain a Section 1983 claim against a municipality. Bielevicz, 915 F.2d at 850. A "plaintiff bears the additional burden of proving that the municipal practice was the proximate cause of the injuries suffered. Id. (citing Losch v. Borough of Parkesburg, 736 F.2d 903, 910 (3d Cir.1984)). This requires a plaintiff to establish a plausible nexus between the policy or custom and the infringement of constitutional rights. City of Okla. City v. Tuttle, 471 U.S. 808, 823 (1985).

Viewing the allegations in the Amended Complaint in the light most favorable to Plaintiff, he has sufficiently strung together a causal link between the municipal custom and his injuries by alleging that policymakers were aware of similar unlawful conduct in the past, but failed to take future precautions, leading, at least in part, to Plaintiff's injuries. Thus, the nexus asserted in the Amended Complaint is not too tenuous to support a Section 1983 claim, because a plaintiff "need not demonstrate that their injuries were the direct result of formal departmental procedures or encouragement." Bielevicz, 915 F.2d at 851. For support, Plaintiff cites numerous internal investigations, prosecutions of officers, and a class action against PPD's Homicide Unit stemming from unconstitutional practices such as concealment of evidence and coercive interrogations. (Doc. No. 17 ¶¶ 84-87.) The Amended Complaint asserts that these similar past constitutional violations, which were widely publicized over decades, were left unaddressed, leading to Plaintiff's injury. At this stage, Plaintiff has sufficiently pled that the PPD had a custom of tolerating misconduct similar to the present allegations, providing an affirmative link to Plaintiff's injuries.

However, where Plaintiff faulters is on the sufficiency of his allegations concerning a specific policymaker. Whether the Monell claim is predicated upon a proclamation of a policy or acquiescence in a well-settled custom, "a plaintiff must show that an official who has the power to make policy is responsible." Bielevicz, 915 F.2d at 850 (citing Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990). When a Monell claim is based on municipal custom, "a plaintiff must show that an official who has the power to make policy is responsible for . . . acquiescence in a well-settled custom." Id. at 850; see also Oaks v. City of Phila., 59 Fed.App'x. 502, 504 (3d Cir. 2003) (dismissing a Monell claim in part because plaintiff did not identify a city policymaker that acquiesced to a discriminatory custom).

"Custom requires proof of knowledge and acquiescence by the decisionmaker." McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009).

Here, Plaintiff alleges that Detective Defendants, pursuant to PPD custom, suppressed exculpatory evidence and threatened witnesses to build a false case against Plaintiff. That may be so. But Plaintiff has not met his additional burden of showing that a City official with "final policymaking authority" acquiesced in the alleged unconstitutional custom in violation of Section 1983. Again, in viewing the facts alleged in the Amended Complaint in the light most favorable to Plaintiff, he merely alleges boilerplate conclusions that PPD had a custom to conceal exculpatory evidence and fabricate witness statements and that these customs "were well known to the City of Philadelphia and its policymakers" through newspaper articles and investigations. (Doc. No. 17 ¶ 81.) That conclusory allegation fails to "plead knowledge [of the alleged violations] by a municipal decisionmaker." Thomas v. City of Phila., 779 Fed.App'x. 99, 102 (3d Cir. 2019) (quoting McTernan, 564 F.3d at 658).

While Plaintiff names the officers involved in his arrest and prosecution, those individuals did not have "policy-making authority." There are no allegations that those who do qualify as policymakers knew about, much less approved, the unlawful investigatory techniques perpetrated by PPD officers.

In fact, the Amended Complaint's only mention of a specific individual acting as a "policymaker" is in reference to Defendant Abraham in her official capacity as the final policymaker of the District Attorney's Office. (Id. ¶ 91.) But it is well-established that a district attorney's actions taken on behalf of the District Attorney's Office cannot form the basis for a Monell claim against a municipality, as the two entities are independent of one another. See White v. City of Phila., No. 23-4538, 2024 WL 1536745, at *5 (E.D. Pa. Apr. 8, 2024) ("The

customs and policies of the District Attorney's Office, including any failure of the organization to train or supervise its attorneys, cannot be attributed to the City."); see also Harris v. Krasner, No. 22-839, 2023 WL 3431233, at *9 (E.D. Pa. May 12, 2023) (citing Whitfield v. City of Phila., 587 F. Supp. 2d 657, 672 (E.D. Pa. 2008)) ("A municipality is not liable under Monell for the actions of its District Attorney undertaken in his or her 'role as a prosecutor.'").

Relevant here is this Court's analysis in Bologna v. Krasner because it provides guidance as to when a district attorney can be considered a municipal policymaker under Monell. No. 24-3185, 2025 WL1762101 (E.D. Pa. Jun. 25, 2025).[2] In Bologna, the Court found a district attorney to be a municipal policymaker when performing administrative functions, such as conducting pre-probable cause investigations, rather than prosecutorial functions. Id. at *30. But, unlike the Court's finding in Bologna, Plaintiff alleges that DA Abraham acted as a municipal policymaker when "failing to disclose Brady exculpatory and impeachment evidence." (Doc. No. 17 ¶ 91.) Defendant Abraham's Brady obligations fall squarely within her prosecutorial duties, and the Amended Complaint does not allege that she made any administrative decisions to establish her acquiescence in the unlawful customs of the PPD. See Laughman v. Com. of Pa., No. 5-1033, 2006 WL 709222, at *5 (M.D. Pa. Mar. 17, 2006) (finding that a county prosecutor had no supervisory authority over police departments and therefore is not a proper policymaker under Monell). Consequently, for Monell purposes, DA Abraham was not a municipal policymaker of the City.

Without a policymaker tied to the conduct underlying the alleged harm, Plaintiff's Monell claim against the City predicated on a municipal custom theory in Count V must be dismissed.

---

[2] This case is currently on appeal to the Third Circuit Court of Appeals. Bologna v. Krasner, No. 25-2371.

### 3. The Amended Complaint Fails to State a Monell Claim Based on Deliberate Indifference

In Count V, Plaintiff also advances a Monell claim on an additional theory—that the City was deliberately indifferent to violations of his constitutionally protected rights. (See Doc. No. 17 at ¶ 89.) Specifically, Plaintiff contends that the City acted with deliberate indifference to the PPD's failure properly train, supervise, and discipline officers that were using unlawful and coercive techniques when investigating homicides. (Id.) Plaintiff's argument is unavailing.

When the alleged "custom at issue is a failure to train or supervise, the plaintiff must show that this failure 'amounts to deliberate indifference to the rights of persons with whom [the municipality's] employees will come into contact.'" Johnson v. City of Phila., 975 F.3d 394, 403 (3d Cir. 2020) (internal quotations omitted). A plaintiff must also identify a specific deficiency, not "simply general laxness or ineffectiveness of training." Niblack v. Murray, No. 12-6910, 2013 WL 4432081, at *8 (D.N.J. Aug. 14, 2013). "There also must be an affirmative link between the alleged inadequacies of the training and the constitutional violation at issue." Id. And although it is true that "a pattern of similar constitutional violations by untrained employees is ordinarily necessary" to make out a failure to train claim under Monell, the United States Supreme Court explained the scope of liability as follows:

> It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

City of Canton v. Harris, 489 U.S. 378, 390 (1989).

Therefore, in order for a municipality's failure to train to amount to deliberate indifference, a plaintiff must show that: (1) municipal policymakers know that employees will

confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights. Ancherani v. City of Scranton, No. 13–cv–02595, 2015 WL 5924366, at *4 (M.D. Pa. Oct. 9, 2015) (citing Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir.1999)).

Here, even assuming arguendo that Plaintiff has plausibly pled prongs one and three of the failure to supervise test denoted above, the Amended Complaint fails to satisfy prong two, requiring a plaintiff to show that "the situation involves a difficult choice or a history of employees mishandling." Id.

Regarding the second prong, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference." Connick v. Thompson, 563 U.S. 51, 62 (2011) (quoting Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. at 409). A plaintiff pressing a § 1983 claim must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred. Colburn v. Upper Darby Twp., 946 F.2d 1017, 1030 (3d Cir.1991). But a plaintiff cannot simply plead that because a municipality has been sued in the past for alleged failure to train that they are aware of a current deficiency in their training. As the court noted in Ezeibe v. City of York:

> Although Plaintiff has attempted to plead a pattern of prior similar constitutional violations that would put Defendant City on notice as to a need for additional training by pointing to the existence of other complaints against Defendant City [ ], Plaintiff's allegations nonetheless remain inadequate. Other courts have noted that "mere allegations, and even settlements, do not establish liability or the existence of an unlawful custom." See Simpson v. Ferry, 202 F. Supp. 3d 444, 453 (E.D. Pa. Aug. 9, 2016). Further, Plaintiff has not identified a "failure to provide specific training that has a causal nexus with [his] injuries" and has not pled any

> facts indicating "that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." See Reitz v. Cty. of Bucks, 125 F.3d 139, 145 (3d Cir. 1997) (citing Colburn, 946 F.2d at 1030). Instead, Plaintiff's allegations, as noted above, consist largely of conclusory assertions echoing the appropriate legal standard without providing factual support.

No. 1:19-00189, 2020 WL 1922632, at *5 (M.D. Pa. Apr. 21, 2020).

Here, the Amended Complaint's factual allegations are insufficient to state a claim for either of the two deliberate indifference municipal liability theories—failure to discipline and failure to train.

First, the Amended Complaint fails to allege a pattern of constitutional violations to support a failure to supervise and discipline claim. In an attempt to state a Monell claim for failure to discipline, Plaintiff cites several newspaper articles, internal investigations, and lawsuits involving unlawful PPD investigation tactics to demonstrate that the City had notice of the issues. (Doc. No. 17 ¶¶ 81-82.) Based on those allegations, Plaintiff avers that the City was constructively aware of, but deliberately indifferent to, a department-wide pattern of constitutional violations. But the Amended Complaint's allegations of unlawful PPD practices are not connected to any specific inadequacy in PPD's disciplinary programs.

While the Amended Complaint raises issues with the adequacy of the PPD's response to the unlawful practices of its officers, it does not provide information about the specific officers named in this suit, and a lack of disciplinary action taken against them, to support a failure to discipline theory. While the instances of misconduct against other wrongly convicted individuals are extremely serious, Plaintiff has not shown that the PPD officers' misconduct went without consequences due to a deficient disciplinary system. For these reasons, Plaintiff has failed to show that the City was deliberately indifferent to a pattern of misconduct occurring within the PPD due to a failure to supervise and discipline officers.

Second, Plaintiff has not stated a municipal liability claim based on failure to train. Plaintiff has not presented evidence to show that the unlawful practices of PPD officers in the past resulted from the City's deliberately indifferent failure to train "investigators in order to ensure proper investigations." (Doc. No. 17 ¶ 89.) The Amended Complaint does not identify any examples of specific training PPD should have offered, nor does it contend that had that specific training been offered, the alleged constitutional violations would not have occurred. See Reitz v. Cnty. of Bucks, 125 F.3d 139, 145 (3d Cir. 1997) (dismissing a failure to train claim where the complaint did not identify specific training that should have been offered or that such training was not provided.) Further, the Amended Complaint is devoid of allegations establishing that the City was on actual or constructive notice that an omission in the PPD training program caused Plaintiff's injuries. As such, Plaintiff has not identified a specific training failure that has a causal nexus with his injuries, such that an absence of that specific training reflected deliberate indifference on the part of the City.

Ultimately, Plaintiff merely alleges conclusory statements to support his claim that the training and disciplinary measures taken in the face of unconstitutional conduct were insufficient. See Torres, 2008 WL 2600314, at *5 (finding the amended complaint failed to specifically demonstrate how the training was inadequate or to suggest how defendants evinced deliberate indifference to the plaintiff's rights.) Therefore, even accepting the Amended Complaint's factual allegations as true and viewing them in the light most favorable to Plaintiff, he has not sufficiently alleged that the City failed to supervise, train, or discipline PPD officers in a manner that amounts to deliberate indifference.

Accordingly, Count V of the Amended Complaint, the Monell claim based on deliberate indifference, will be dismissed.

**C. The Monell Claim Against Defendant Abraham in Count VI Will Be Dismissed**

At issue in Defendant Lynne Abraham's Motion to Dismiss is Count VI is a Monell claim brought against her in her official capacity for having an unconstitutional policy, practice, or custom of (1) failure to properly train, supervise, and discipline prosecutors with respect to their constitutional obligations to disclose Brady evidence and (2) suppressing Brady evidence based on subjective beliefs about its reliability. (Doc. No. 17 ¶ 112.) Consequently, the key inquiry here is whether Plaintiff may bring a Monell claim against Defendant Abraham as a final policymaker for the District Attorney's Office ("DAO"), given that the DAO is not a proper defendant.

In the Motion to Dismiss, Defendant Abraham first argues that Plaintiff cannot properly assert an official-capacity Monell claim against her because it essentially a claim against the unnamed DAO, which is not a state actor subject to Section 1983 liability. (Doc. No. 36-1 at 5.)

As outlined above, Monell stands for the proposition that municipal entities can be subject to Section 1983 liability in limited circumstances. 436 U.S. at 690. Accordingly, municipalities cannot be held liable under Section 1983 for the acts of employees based on the doctrine of respondeat superior or for other forms of vicarious liability. Monell, 436 U.S. at 692.

Notably, a municipality is not liable under Monell for the actions of its District Attorney undertaken in his or her "role as a prosecutor." Whitfield v. City of Phila., 587 F. Supp. 2d 657, 672 (E.D. Pa. 2008.) Put differently, "a municipality can only be held liable for the acts of its officials undertaken in an administrative capacity." Id. at 671 (citing Williams v. Fedor, 69 F. Supp. 2d 649, 663 (M.D. Pa. 1999) (concluding that a municipality "cannot be held liable on the basis of the challenged 'prosecutorial decisions")).

As Defendant Abraham correctly notes, the Third Circuit has consistently held that District Attorneys' offices are not "entities" subject to suit under Section 1983. Reitz, 125 F.3d at 139; Fake v. Pennsylvania, No. 25-1798, 2025 WL 2741856, at *2 (3d Cir. Sept. 26, 2025). Furthermore, an official-capacity suit is generally "in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985). From these principles, Defendant Abraham proposes a cogent syllogism: "[i]f an official-capacity claim is functionally a claim against the office itself, and the office itself is not amenable to suit, then the official-capacity claim necessarily fails." (Doc. No. 36 at 11.)

Defendant submits that courts have already reflected adherence to Reitz, reasoning that Section 1983 claims against the Philadelphia DAO are not actionable. (Id. at 10.) To be sure, Reitz and Graham were applied in tandem in Dwight v. Krasner, No. 24-cv-2513, 2024 WL 4988974 (E.D. Pa. Dec. 5, 2024) (applying Graham and Reitz to dismiss an official-capacity Monell claim against DA Krasner, finding it indistinguishable from claims against the DAO, which is not an entity subject to § 1983 suit). Thus, Defendant alleges that Plaintiff's claim in Count VI merely relabels the claim against the DAO as a claim against Defendant Abraham, asserting the same substantive allegations and identifying the same policies, practices, and customs of the DAO. (Doc. No. 36 at 9.)

In response, Plaintiff highlights that courts in this district have permitted official capacity suits against current and former District Attorneys to proceed. See Bologna v. Krasner, No. 24-3185, 2025 WL1762101, at *26, n.23 (E.D. Pa. Jun. 25, 2025) ("Plaintiff's Monell claim here against the City of Philadelphia and DA Krasner is proper because DA Krasner was sued in Count II in his official capacity as the District Attorney of Philadelphia.") Defendant counters that Bologna "merely recognizes that a plaintiff may plead a Monell claim while naming the

relevant policymaker in his official capacity," but in no way does it hold that an official-capacity claim supplies a distinct vehicle to sue the DAO on a municipal liability theory under Section 1983. (Doc. No. 40 at 3-4.)

The Court declines to contravene the overwhelming case law which has historically dismissed standalone official-capacity Monell claims against District Attorneys—particularly in view of binding precedent set forth in Graham and Reitz. Contrary to Plaintiff's stance, Dwight resolved the very discrete issue Plaintiff faces here by reasoning that the claim against DA Krasner was "indistinguishable from claims against the governmental entity that employs him, here the Philadelphia DAO," and pursuant to Reitz, DAOs "are not entities subject to suit under § 1983." Dwight, 2024 WL 4988974, at *3.

Finally, Plaintiff contends that because in Johnson v. Philadelphia—where Plaintiff's co-defendant brought similar claims against DA Abraham—Plaintiff was granted leave to amend the Complaint for the stated purpose of substituting District Attorney Abraham in her official capacity as a policymaker for the DAO, the court indicated acquiescence to this theory of liability. (Doc. No. 39 at 11.)

Nevertheless, Johnson squarely rejects Plaintiff's theory about the reasons behind granting Plaintiff leave to amend the complaint, because the "Order did not explain whether or why an official-capacity claim against District Attorney Abraham might be proper." No. 24-cv-36, 2025 WL 1762101, at *6 (E.D. Pa. Aug. 10, 2026). As such, "the Court's decision to grant leave to amend does not endorse the merits" of Plaintiff's claim that an official-capacity suit against Defendant Abraham is appropriate. Id.

Accordingly, Count VI will be dismissed, and former District Attorney Lynne Abraham will be dismissed as a Defendant in this case.

**D. All Claims Against Defendants Booker and Bova Will Be Dismissed**

Counts I, II, III, IV, VII and VIII contain Section 1983 and supplemental state law claims against Defendants Booker and Bova in their individual capacity as Detectives. (See Doc. No. 17 at 42-46.) In their Motions to Dismiss, Defendants Booker and Bova seek dismissal of all claims against them in the present suit because the Amended Complaint fails to allege that those Defendants were personally involved in the alleged unconstitutional conduct. (See Doc. Nos. 25, 26.) In the Response to the Motions, Plaintiff voluntarily agreed to dismiss Defendants Booker and Bova from this action. (Doc. No 33 at 4.) In accordance with Defendants' Booker and Bova's Motions (Doc. Nos. 25, 26) and Plaintiff's Response (Doc. No. 33), the Court will dismiss all claims against Defendant Booker and Bova.

**V. CONCLUSION**

For the foregoing reasons, the Motions to Dismiss will be granted (Doc. Nos. 25, 26, 36-1.) First, Defendants City of Philadelphia, Pirrone, Harris, Walter, King, Bova, and McDermott's Motion to Dismiss (Doc. No. 26) will be granted. As a result, the Fourteenth Amendment malicious prosecution claim will be dismissed in Count II, leaving only the Fourth Amendment Claim, and Count V, the Monell claim against the City of Philadelphia, will be dismissed in its entirety. Further, as agreed by Plaintiff, Defendant Bova will be dismissed as a Defendant in this case. Also, Defendant Booker's Motion to Dismiss all claims against him (Doc. No. 25), to which Plaintiff does not object, will be granted. As such, Defendant Booker will be dismissed as a Defendant in this case. Third, Defendant Abraham's Motion to Dismiss Count VI (Doc. No. 36-1) will be granted, and she will be dismissed as a Defendant in this case. Only the claims against Detective Defendants in Counts I, II, III, IV, VII, and VIII remain here. An appropriate Order follows.